UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| JAMES E. MANLEY, ) | |
| ) | |
| Plaintiff ) | |
| ) | |
| vs. ) | CAUSE NO. 3:11-CV-320 RM |
| ) | |
| M. DANIELS, *et al.*, ) | |
| ) | |
| Defendants ) | |

OPINION AND ORDER

James E. Manley, a *pro se* prisoner, filed an amended complaint under 42 U.S.C. § 1983. (DE 9.) Pursuant to 28 U.S.C. § 1915A, the court must review the complaint and dismiss it if the action is frivolous or malicious, fails to state a claim, or seeks monetary relief against a defendant who is immune from such relief. Courts apply the same standard under Section 1915A as when deciding a motion under FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6). Lagerstrom v. Kingston, 463 F.3d 621, 624 (7th Cir. 2006). To survive a motion to dismiss under RULE 12(b)(6), a complaint must state a claim for relief that is plausible on its face. Bissessur v. Indiana Univ. Bd. of Trs., 581 F.3d 599, 602-03 (7th Cir. 2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 603. Thus, a "plaintiff must do better than putting a few words on paper that, in the hands of an imaginative reader, *might* suggest that something has happened to her that *might* be redressed by the law." Swanson v. Citibank, N.A., 614 F.3d 400, 403 (7th Cir.2010) (emphasis in original). The court must bear in mind, however, that "[a] document filed *pro*

*se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007).

Mr. Manley claims that correctional officials at Miami Correctional Facility ("Miami") have unduly interfered with his right to practice his Wiccan religion. Although his complaint is lengthy and somewhat convoluted, the crux of his allegations are as follows: one of the chaplains at Miami delayed the processing of his religious preference form, although this form was later completed by another chaplain; Wiccan services are scheduled at a time that interferes with his work schedule; two of the guards made disparaging comments about his religion; his religious items were improperly confiscated; one of the chaplains delayed his receipt of a book he ordered through the mail; he was offended by a Christian invocation given at a graduation ceremony at the prison; and he was offended by religious literature given to him by an organization called "Christmas Behind Bars." (DE 9 at 5-10.) Mr. Manley names twenty-four different defendants in connection with these claims and raises claims under the First Amendment and the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc *et seq.*

Prisoners enjoy a right to exercise their religion under the First Amendment, Vinning-El v. Evans, ---F.3d---, 2011 WL 4336661, at *1 (7th Cir. Sept. 16, 2011), but this right is "subject to limits appropriate to the nature of prison life." Id. Restrictions that limit the exercise of religion are permissible if they are reasonably related to legitimate penological

objectives, which includes security and economic concerns. Turner v. Safley, 482 U.S. 78, 89–91 (1987); Ortiz v. Downey, 561 F.3d 664, 669 (7th Cir. 2009).

Inmates are entitled to broader religious protection under RLUIPA, which provides in pertinent part:

> No government shall impose . . . a substantial burden on the religious exercise of a person residing in or confined to an institution . . . unless the government demonstrates that imposition of the burden on that person—
> (1) is in furtherance of a compelling governmental interest; and
> (2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc-1(a). A "substantial burden" on religious exercise is "one that necessarily bears direct, primary, and fundamental responsibility for rendering religious exercise. . . effectively impracticable." Civil Liberties for Urban Believers v. City of Chicago, 342 F.3d 752, 761 (7th Cir. 2003). RLUIPA does not "elevate accommodation of religious observances over an institution's need to maintain order and safety . . . [and] an accommodation must be measured so that it does not override other significant interests." Cutter v. Wilkinson, 544 U.S. 709, 722 (2005). Courts must apply RLUIPA "with due deference to the experience and expertise of prison and jail administrators in establishing necessary regulations and procedures to maintain good order, security and discipline, consistent with consideration of costs and limited resources." Id. at 723.

Under those standards, the bulk of Mr. Manley's claims aren't cognizable under either the First Amendment or RLUIPA. That two guards made disparaging comments about the Wiccan religion, while perhaps unprofessional, didn't substantially burden Mr.

Manley's own religious practice.[1] Nor would a temporary delay in the processing of his religious preference form and his receipt of a book, or that he took offense at literature and statements espousing other religious beliefs. Regarding the schedule for Wiccan services, Mr. Manley may choose to work rather than attend services, but that is his choice, not a prohibition on worship imposed by the defendants. He isn't required to work, nor does he have a liberty or property interest in his prison job. *See* DeWalt v. Carter, 224 F.3d 607, 613 (7th Cir. 2000). Accordingly, those allegations fail to state a plausible claim for relief.

That leaves Mr. Manley's claim that his religious items were improperly confiscated. Specifically, he claims that Sergeant T. Dice improperly confiscated his athame (a type of dagger), a pentagram, a cup he used as a "ritual chalice," and a towel he used as a ceremonial tarot cloth. (DE 9 at 6-8.) He asserts that all of these items satisfied Indiana Department of Correction ("IDOC") standards for religious items allowed to be kept in a prisoner's cell, including the athame which was constructed from "safe material." (*Id.* at 7.) He further alleges that these items were integral to the exercise of his Wiccan religion. (*Id.*) Giving Mr. Manley the inferences to which he is entitled at this stage, he has stated a claim for relief against Sergeant Dice. *See* Ortiz, 561 F.3d at 669-670 (inmate stated claim based on his allegation that prison denied him religious articles without adequate penological justification). Further factual development might show that the prison had a valid reason for taking these items, Mr. Manley has alleged enough to proceed past the

---

[1] This type of verbal harassment also does not "constitute cruel and unusual punishment, deprive a prisoner of a protected liberty interest, or deny a prisoner equal protection of the laws." DeWalt v. Carter, 224 F.3d 607, 612 (7th Cir. 2000).

pleading stage. *See id.*

Mr. Manley seeks to sue a host of other defendants in connection with this claim, including supervisory personnel at the prison, high-ranking IDOC officials, and the Governor of Indiana. (DE 9 at 7.) Most of his allegations are general in nature and appear to be based on a *respondeat superior* theory of liability. (*See id.*) There is no general *respondeat superior* liability under 42 U.S.C. § 1983, however, and "public employees are responsible for their own misdeeds but not for anyone else's." Burks v. Raemisch, 555 F.3d 592, 596 (7th Cir. 2009). Thus, these officials cannot be held liable solely in their capacity as supervisors or individuals responsible for oversight of the prison. All defendants who are not alleged to have direct personal involvement in these events will be dismissed.

Mr. Manley raises allegations about the direct personal involvement of three defendants: IDOC Commissioner Ed Buss, Assistant Superintendent M. Treadwell, and Administrative Assistant Clair Barnes. (DE 9 at 4, 7.) As to Commissioner Buss, Mr. Manley asserts that he denied his request for the return of his religious items, informing him that the athame was confiscated "because it was fairly stiff and appear[ed] very real"; the pentagram because it was made from "orange and white string . . . which is not allowed"; and the chalice because he was not allowed to possess "an empty drink mix container." (*Id.* at 7.) He claims Commissioner Buss failed to address why the tarot cloth was taken, and that his asserted justifications for taking the other items were inadequate. He alleges that the items satisfied IDOC standards and were similar to or made from items that could be purchased at the prison commissary. (*Id.*) Giving Mr. Manley the inferences to which he

is entitled at this stage, he has stated a claim against Commissioner Buss.

Mr. Manley alleges that Assistant Superintendent Treadwell personally denied his request for the return of the pentagram, informing him that inmates were not allowed to possess pentagrams in their cells. (*Id.*) Mr. Manley alleges that there was no legitimate reason to deny him the pentagram, which met with IDOC standards. (*Id.*) He alleges that Administrative Assistant Barnes also denied his request for the return of the items, telling him that he "cannot even possess in his cell some items available on the prison commissary because [he] wants them for religious purposes." (DE 9 at 8.) Giving Mr. Manley the inferences to which he is entitled, he has stated a claim against Assistant Superintendent Treadwell and Administrative Assistant Barnes.[2]

Mr. Manley also names the correctional facility itself as a defendant, but this is a building, not a person or even a policy-making body that can be sued for constitutional violations under 42 U.S.C. § 1983. He names the IDOC as a defendant, although it's not clear if he is attempting to raise an official policy claim under Monell v. Dep't of Soc. Servs., 436 U.S. 658, 701 (1978). He hasn't alleged, nor can it be plausibly inferred from the complaint, that IDOC has an unconstitutional policy regarding the religious rights of inmates. Indeed, Mr. Manley makes clear in his complaint that his items were allowed

---

[2] Mr. Manley further alleges that two other guards, Officers Mauer and Kochersparger, didn't send his confiscated items to the American Civil Liberties Union as he requested. (DE 9 at 8.) The court can't discern how this act by the guards unduly interfered with Mr. Manley's religious practice. To the extent he is trying to raise an access to the courts claim, he has not alleged an actual injury, such as the loss of a meritorious cause of action. *See* Ortiz, 561 F.3d at 671 (prisoner's access to the courts claim was properly dismissed where he did not allege any actual injury). Indeed, Mr. Manley is pursuing a claim for relief regarding the loss of his religious items.

under IDOC policy; he alleges that the individual defendants violated that policy when they refused to let him have the items in his cell. Accordingly, IDOC will be dismissed as a defendant.

For these reasons, the court:

(1) GRANTS the plaintiff leave to proceed on a claim against T. Dice, Ed Buss, M. Treadwell, and Clair Barnes in their individual capacities for compensatory damages and injunctive relief for denying him the right to possess religious items integral to his religion in violation of the First Amendment and the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. § 2000cc-1(a);

(2) DISMISSES M. Daniels, Indiana Department of Correction, B. Lemmon, M. Pavese, S. Hall, Miami Correctional Facility, M. Sevier, S. Stevenson, Chaplain Hodges, Chaplain Babbs, Chaplain Smith, Chaplain Leslie, Counselor Bradley, S. Roark, Major Hale, Captain Tucker, Sergeant Oswalt, Officer Mauer, Officer Kochersparger, and Officer J. Doe;

(3) DISMISSES all other claims;

(4) GRANTS the motion for service by the U.S. Marshals Service (DE 5) and DIRECTS the U.S. Marshals Service, pursuant to 28 U.S.C. § 1915(d), to effect service of process on T. Dice, Ed Buss, M. Treadwell, and Clair Barnes; and

(5) ORDERS, pursuant to 42 U.S.C. § 1997e(g)(2), that T. Dice, Ed Buss, M. Treadwell, and Clair Barnes respond, as provided for in the FEDERAL RULES OF CIVIL

PROCEDURE and N.D. IND. L.R. 10.1, only to the claim for which the *pro se* plaintiff has been granted leave to proceed in this screening order.

SO ORDERED.

ENTERED: October  17 , 2011

                                                /s/ Robert L. Miller, Jr.
                                                Judge
                                                United States District Court

cc: J. Manley