UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| JAMES E. MANLEY, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | |
| | ) | CAUSE NO. 3:11-CV-320 RM |
| vs. | ) | |
| | ) | |
| M. DANIELS, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

OPINION AND ORDER

James E. Manley, a *pro se* prisoner, is proceeding on a claim that prison staff at Miami Correctional Facility ("MCF") substantially burdened his religious practice by taking certain religious items from his cell. (DE 10.) The parties have filed cross-motions for summary judgment. (DE 49, 58.) Mr. Manley also moves for sanctions, claiming that two of the defendants committed perjury in their summary judgment filings. (DE 50, 51.)

Summary judgment must be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Not every dispute between the parties makes summary judgment improper; "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Id. To decide whether a genuine issue of material fact exists, the court must construe all facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's

favor. Ogden v. Atterholt, 606 F.3d 355, 358 (7th Cir. 2010). A party opposing a properly supported summary judgment motion can't rely merely on allegations or denials in its own pleading, but rather must "marshal and present the court with the evidence she contends will prove her case." Goodman v. Nat'l Sec. Agency, Inc., 621 F.3d 651, 654 (7th Cir. 2010). If the nonmoving party doesn't establish the existence of an essential element on which he or she bears the burden of proof at trial, summary judgment is proper. Massey v. Johnson, 457 F.3d 711, 716 (7th Cir. 2006). When deciding cross-motions for summary judgment, the court must "constru[e] the evidence and all reasonable inferences in favor of the party against whom the motion under consideration is made." Durable Manuf. Co. v. U.S. Dep't of Labor, 578 F.3d 497, 501 (7th Cir. 2009).

The record shows that Mr. Manley is an adherent of Wicca.[1] (DE 49-2, Manley Aff. ¶¶ 2-3, 9, 12.) He kept several items in his cell for use in his religious practice: an "athame" or ritual dagger he constructed out of "paper board" and wrapped in black craft tape; a pentagram he constructed of out paperclips and thread; an empty drink mix container on which he wrote "chalice"; and a towel he was using as a ceremonial altar cloth. (DE 49-2, Manley Aff. ¶¶ 17-57.) On April 13, 2010, Mr. Manley's housing unit was placed on lockdown and a search of the cellhouse was conducted. (Id. ¶ 17.) Sergeant Tim Dice conducted a search of Mr. Manley's cell, discovered those items, and confiscated them. (DE 58-2, Dice Aff. ¶¶ 3-4.) The Indiana Department of Correction ("DOC") has a policy allowing inmates

---

[1] Wicca is a "polytheistic faith based on beliefs that prevailed in both the Old World and the New World before Christianity." O'Bryan v. Bureau of Prisons, 349 F.3d 399, 400 (7th Cir. 2003). "Its practices include the use of herbal magic and benign witchcraft." Id.

to possess certain religious items in their cell, as long as those items otherwise conform to DOC policy for offender property. (DE 58-2, Dice Aff. ¶ 9.) Under DOC policy, any property that has been altered from its original form is unauthorized. (Id. ¶ 8.) This rule is based on safety and security reasons, because the DOC has determined that altered property has a potential to be unsafe or otherwise a threat to the inmate, other inmates, or correctional staff. (Id. ¶ 7.) Sergeant Dice confiscated Mr. Manley's items because he believed they didn't conform to DOC policy. (Id. ¶¶ 4-5.)

Mr. Manley asked for his religious items back through various channels, including letters to prison staff and DOC officials. (DE 49-1 at 1-10; DE 49-2, Manley Aff. ¶¶ 51-72.) On April 23, 2010, former Assistant Superintendent Mary Treadwell met with Mr. Manley in the conference room of the administration building concerning his complaint about his religious items. (DE 49-2, Manley Aff. ¶ 37.) During the meeting, the items were brought in and placed on the table, and Mr. Manley noticed that his towel was missing. (Id. ¶ 40.) At the end of the meeting, Ms. Treadwell refused to return any of the items. (Id. ¶¶ 48-50.)

Four days later, former DOC Commissioner Edwin G. Buss sent Mr. Manley a letter about his religious items. (DE 49-1 at 2-3.) He advised Mr. Manley that his items did not comply with DOC requirements and would not be returned to him. (Id. at 2.) Mr. Buss said the athame had to be constructed from paper or other safe material, whereas Mr. Manley's was "completely wrapped in black tape, making it fairly stiff and appear very real." (Id.) He also told Mr. Manley that his handmade pentagram wasn't permissible, but that he could get an authorized pentagram medallion through the facility's chaplain. (Id.)

3

Commissioner Buss also said that the empty drink mix container with writing on it couldn't be kept in his cell because containers were authorized only for their original purpose. (Id.) The letter didn't mention Mr. Manley's towel. (Id. at 2-3.) Mr. Buss advised Mr. Manley to consult the DOC's *Handbook of Religious Beliefs and Practices*, available in the prison law library, "so that you are aware of what is authorized and how it should be constructed." (Id. at 3.)

Under the First Amendment, prisoners enjoy a right to exercise their religion, although this right is "subject to limits appropriate to the nature of prison life." Vinning-El v. Evans, 657 F.3d 591, 592-593 (7th Cir. 2011). Restrictions on the exercise of religion are allowed as long as they are reasonably related to legitimate penological objectives, Turner v. Safley, 482 U.S. 78, 89–91 (1987), which includes safety, security, and economic concerns. Ortiz v. Downey, 561 F.3d 664, 669 (7th Cir. 2009). "[B]ecause the problems of prisons in America are complex and intractable, and because courts are particularly ill equipped to deal with these problems, [courts] generally have deferred to the judgments of prison officials" on these issues. Shaw v. Murphy, 532 U.S. 223, 229 (2001). The First Amendment doesn't require that an inmate be afforded his preferred method of practicing his religion, and "[w]here other avenues remain available for the exercise of the asserted right, courts should be particularly conscious of the measure of judicial deference owed to corrections officials[.]" Turner v. Safley, 482 U.S. at 90 (internal quote marks and citation omitted). Alternatives for exercising a constitutional right "need not be ideal . . . they need only be available." Overton v. Bazzetta, 539 U.S. 126, 135 (2003).

Inmates are also entitled to religious protection under the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), which provides in pertinent part:

> No government shall impose . . . a substantial burden on the religious exercise of a person residing in or confined to an institution . . . unless the government demonstrates that imposition of the burden on that person—
>
> > (1) is in furtherance of a compelling governmental interest; and
> > (2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc-1(a). A "substantial burden" is one that renders religious exercise "effectively impracticable." Civil Liberties for Urban Believers v. City of Chicago, 342 F.3d 752, 761 (7th Cir. 2003). The inmate bears the burden of establishing that the challenged action is substantially burdensome to his religious practice. Koger v. Bryan, 523 F.3d 789, 796 (7th Cir. 2008). At the summary judgment stage, he must submit evidence demonstrating that the burden imposed to his religious practice was substantial, and his "unreasoned say-so" isn't enough. Borzych v. Frank, 439 F.3d 388, 390 (7th Cir. 2006).

If the inmate carries his burden, the defendants must show that the challenged conduct is the least restrictive means of pursuing a compelling governmental interest. Koger v. Bryan, 523 F.3d at 796. In assessing this factor, the court must bear in mind that RLUIPA does not "elevate accommodation of religious observances over an institution's need to maintain order and safety . . . [and] an accommodation must be measured so that it does not override other significant interests." Cutter v. Wilkinson, 544 U.S. 709, 722 (2005). Courts apply RLUIPA "with particular sensitivity to security concerns," and must afford "due deference to the experience and expertise of prison and jail administrators in

5

establishing necessary regulations and procedures to maintain good order, security and discipline, consistent with consideration of costs and limited resources." Id. at 723. A prison is free to deny inmate religious requests predicated on RLUIPA if they "jeopardize the effective functioning of an institution" or "impose unjustified burdens" on facility staff. Id. at 726.

The parties dispute how the search of Mr. Manley's cell was conducted, including whether Sergeant Dice made rude remarks while confiscating Mr. Manley's religious articles.[2] (DE 49-2, Manley Aff. ¶¶ 20-25.) Even if such regrettable comments were made, they wouldn't affect liability under 42 U.S.C. § 1983. The Constitution isn't a code of civility; the relevant issue is whether the prison's refusal to let Mr. Manley keep his religious items substantially burdened his religious practice. *See* 42 U.S.C. § 2000cc-1(a); Vinning-El, 657 F.3d at 593. Sergeant Dice's comments are particularly irrelevant since it is apparent from the record that it was Mr. Buss, not Sergeant Dice, who made the final decision about whether Mr. Manley could keep the religious items in his cell. Accordingly, this dispute doesn't preclude the entry of summary judgment. *See* Anderson, 477 U.S. at 248.

The parties devote a significant portion of their briefs to whether prison staff complied with internal DOC procedures when they confiscated the property. (*See* DE 49;

---

[2] Mr. Manley asserts that Sergeant Dice told him "[t]hat ain't a fucking religion" when he stated he was a Wiccan and called his ritual dagger a "fucking shank." (DE 49-2, Manley Aff. ¶¶ 21, 25.) Sergeant Dice says he is "without knowledge or information sufficient to admit or deny" whether he made these comments. (DE 58-4, Response to Request to Admit ¶¶ 5-6.) Sergeant Dice's response is puzzling, but as explained, the dispute over these comments is irrelevant.

DE 58; DE 59; DE 63-1.) Mr. Manley asserts a number of procedural irregularities, including that he did not get a proper notice of confiscation when his religious articles were taken. (*See* DE 50-51; DE 49-2, Manley Aff. ¶¶ 31-40; DE 63 at 1-3.) He goes so far as to request sanctions—or criminal prosecution for perjury—against two of the defendants based on alleged falsehoods in their affidavits on these issues. (DE 50, 51.) The defendants respond that they fully complied with internal procedures in confiscating the items. (DE 53; DE 58-1, Barnes Aff. ¶¶ 3-12; DE 58-2, Dice Aff. ¶¶ 4-12.)

This dispute is also immaterial. A violation of internal prison policy no more establishes liability under 42 U.S.C. § 1983 than compliance with a prison policy would preclude a finding of liability. *See* Sobitan v. Glud, 589 F.3d 379, 389 (7th Cir. 2009) ("By definition, federal law, not state law, provides the source of liability for a claim alleging the deprivation of a federal constitutional right."); Scott v. Edinburg, 346 F.3d 752, 760 (7th Cir. 2003) (observing that 42 U.S.C. § 1983 protects plaintiffs from constitutional violations, not violations of state statutes or administrative regulations). Beyond the dispute's immateriality, the court can't discern any obvious falsehoods in the defendants' affidavits. (*See* DE 58-1, Barnes Aff.; DE 58-2, Dice Aff.) The parties simply disagree about what occurred. The court finds no basis to sanction the defendants or turn this matter over to authorities for criminal prosecution as Mr. Manley requests. His request for sanctions (DE 50, 51) will be denied.

Turning then to the crux of the dispute, the court must decide whether the deprivation of his religious items violated Mr. Manley's rights. The parties agree that no

hearing is needed and that all the relevant evidence is before the court. (DE 49 at 1; DE 58 at 1.) Based on this record, Mr. Manley hasn't shown that the loss of his items substantially burdened his religious practice and, even if he did, the prison has offered compelling reasons why the items were confiscated.

Mr. Manley constructed his athame of "paper board," which he describes as "like on the back of a pad of paper only twice as thick," and wrapped it in "black craft tape." (DE 49-1 at 6.) The prison legitimately concluded that this item was not permissible due to potential safety concerns.[3] Courts are aware of the heightened security issues presented when an object in an inmate's possession resembles a weapon. As the Seventh Circuit has recognized, "prisons are inherently dangerous places and are inhabited by violent people." United States v. Tokash, 282 F.3d 962, 970 (7th Cir. 2002). Even if Mr. Manley's athame couldn't actually cause physical harm, he or someone else could use it to threaten other inmates or staff who didn't know the item was fake. The presence off such an object also poses additional burdens on staff conducting searches for contraband, who must give special attention to the item and possibly seek guidance from their superiors regarding whether the object poses a threat to the security of the facility. *See* Overton v. Bazzetta, 539 U.S. at 135 (First Amendment did not require prison to accommodate inmate's demands where they would "cause a significant reallocation of the prison systems financial

---

[3] The defendants inartfully argue that this item was confiscated because it was "altered." (*See* DE 59 at 9-10.) As Mr. Manley points out, all athames are technically "altered" because they must be constructed by the prisoner. (DE 63 at 3.) Nevertheless, it is apparent that the defendants are arguing that Mr. Manley's athame, which was wrapped in black craft tape, was altered from the type of paper athame that is permissible under the rules.

8

resources" and would "impair the ability of corrections officers to protect all who are inside a prison's walls."); *see also* <u>Mark v. Gustafson</u>, 286 Fed. Appx. 309, 312 (7th Cir. Jun. 18, 2008) (prison's refusal to allow inmate to affix Wiccan symbols to his cell walls was justified since it promoted prison security by ensuring expeditious inspections of prison cells). The prison isn't precluding Mr. Manley from possessing an athame or using it in his religious practice; he simply must make one that is readily distinguishable from an actual dagger.

Similarly, although Mr. Manley wasn't permitted to possess the pentagram he constructed out of thread and paperclips, a pentagram medallion is available to him through the prison chaplain. (DE 49-1 at 3.) He is also allowed to have a cup in his cell, but it must conform with DOC policy; he can't keep an empty drink mix container, nor can he have anything that has writing on it or is otherwise altered. (*See* <u>id.</u>; DE 58-1, Barnes Aff. ¶¶ 3-9; DE 58-2, Dice Aff. ¶¶ 4-10.)

Mr. Manley has alternative means available to practice his religion through the use of comparable items, and he hasn't pointed to evidence that could demonstrate that the confiscation of the particular items he was using rendered his religious exercise "effectively impracticable." <u>Civil Liberties for Urban Believers</u>, 342 F.3d at 761. In turn, the prison has presented a legitimate concern with prohibiting an inmate from possessing property that closely resembles a weapon, or property altered from its original form, given the potential security risks and the additional burdens placed on prison staff by such property. Under these circumstances, Mr. Manley has not established a violation of his rights. *See* <u>Singson v. Norris</u>, 553 F.3d 660, 662-663 (8th Cir. 2009) (prison offered sufficient justification for

9

refusing to allow Wiccan inmate to keep tarot cards in his cell based on potential safety and security risks, and inmate had alternative access to tarot cards, which could be checked out from prison chaplain); DeSimone v. Bartow, 355 Fed. Appx. 44, 46 (7th Cir. Dec. 8, 2009) (inmate failed to establish that confiscation of his religious journals written in coded language, based on facility's determination that coded writing presented a potential security risk, substantially burdened his religious practice); Ghashiyah v. Litscher, 278 Fed. Appx. 654, 658 (7th Cir. May 15, 2008) (affirming summary judgment for defendants on RLUIPA claim where evidence showed inmate could have religious property in his possession if he complied with DOC procedures); Gelford v. Frank, 310 Fed. Appx. 887, 890 (7th Cir. Apr. 2, 2008) (Wiccan inmates failed to demonstrate that their religious practice was substantially burdened by prison's refusal to allow them certain divination tools and a particular type of pentagram).

That leaves the matter of Mr. Manley's towel. There is little evidence in the record regarding why the towel was taken and/or how this property was "altered" such that it was unauthorized. Sergeant Dice apparently believed that Mr. Manley was using the towel to hide the athame; from Mr. Manley's version, it appears that the towel might have been confiscated simply because it was in his "religious box" along with the athame, and that prison staff somehow lost it before his meeting with Ms. Treadwell. (DE 49-2, Manley Aff. ¶¶ 29, 40.)

Regardless, nothing in the record suggests that the towel was unique in any way that was integral to Mr. Manley's religious practice. Mr. Manley attests that he purchased

the towel at the prison commissary, and the defendants attest that he is permitted to keep such an item in his cell as long as it is not altered in any way. (*See* DE 49-2, Manley Aff. ¶ 41; DE 58-1, Barnes Aff. ¶¶ 3-9; DE 58-2, Dice Aff. ¶¶ 4-10.) It is regrettable that the towel was lost, and Mr. Manley might be entitled to compensation under state tort law for the value of the towel. *See* IND. CODE § 34-13-3-1 *et seq.*; *see also* Wynn v. Southward, 251 F.3d 588, 593 (7th Cir. 2001) (Indiana prisoner had an adequate post-deprivation remedy available under state law to redress the negligent or intentional deprivation of his property). But he hasn't demonstrated that the loss of this replaceable item rendered his religious practice "effectively impracticable."[4] Civil Liberties for Urban Believers, 342 F.3d at 761.

For the reasons set forth above, the court DENIES the plaintiff's motion for summary judgment (DE 49) and his motions for sanctions (DE 50, 51). The court GRANTS the defendants' motion for summary judgment, (DE 58) and the clerk is DIRECTED to enter judgment in favor of the defendants.

SO ORDERED.

ENTERED: November  2 , 2012.          /s/ Robert L. Miller, Jr.
                                      Judge
                                      United States District Court

---

[4] Because Mr. Manley has not established a violation of his rights, the court need not reach the defendants' alternative arguments regarding qualified immunity, supervisory liability, and liability of a grievance officer. (*See* DE 59 at 6-8, 10-11.)

11